# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

NATCHEZ REGIONAL MEDICAL CENTER                              PLAINTIFF

VERSUS                              CIVIL ACTION NO: 5:09-cv-207-DCB-JMR

QUORUM HEALTH RESOURCES, LLC,
JEFFREY S. WESSELMAN, AND MICHAEL
ANDERSON                                                     DEFENDANTS

## OPINION AND ORDER

This cause comes before the Court on the defendant's Motion to Dismiss [docket entry no. 8] and Motion for More Definite Statement [docket entry no. 9]. Having carefully considered the Motions, plaintiff's Responses thereto, applicable statutory and case law, and being otherwise fully advised in the premises, the Court finds and orders as follows:

## I. FACTS AND PROCEDURAL HISTORY

This action was commenced by Natchez Regional Medical Center ("Natchez Regional" or "plaintiff") against Quorum Health Resources, LLC ("QHR" or "defendant"), Jeffrey S. Wesselman, and Michael Anderson ("defendants") on December 7, 2009, in the United States District Court for the Southern District of Mississippi.[1] The instant case arises from a management agreement that Natchez Regional entered into with QHR in 1992. (Compl. ¶ 21). The management agreement required QHR to provide hospital management

---

[1] Natchez Regional is a "community hospital" as defined under Miss. Code Ann. § 41-13-10(c). As a result, it is an entity of the state.

services for Natchez Regional in Adams County, Mississippi. Id. A second management agreement was entered into between the parties in September 1999, and it was later amended on December 2, 2002, September 10, 2004, and June 11, 2007, respectively. Id. The most recent amendment on June 11, 2007, extended the management agreement to September 30, 2009. (Compl. ¶ 22). Pursuant to the management agreement, defendant Wesselman was hired by QHR as the Chief Financial Officer ("CFO") of Natchez Regional from September 12, 2005, to February 2006, and also served as the Chief Executive Officer ("CEO") of Natchez Regional from April 2006 to March 24, 2008. (Compl. ¶ 4). QHR hired defendant Anderson as the interim Chief Financial Officer of Natchez Regional from April 2006 until September 2007, at which time he became the CFO (Compl. ¶ 3). He served in this position until January 2008. Id.[2]

In the Complaint, the plaintiff alleges:

Count 1: Breach of Fiduciary Duties against all defendants;

Count 2: Breach of Contract against QHR;

Count 3: Breach of the Covenant of Good Faith and Fair Dealing against QHR;

Count 4: Negligence against all defendants;

Count 5: Fraud against all defendants;

Count 6: Negligent Misrepresentation against all defendants;

---

[2] These facts are conceded as true by the defendants in their Motion to Dismiss.

> Count 7: Aiding and Abetting Breach of Fiduciary Duty against QHR;
>
> Count 8: Fraudulent Transfers Under the Mississippi Uniform Fraudulent Transfer Act against QHR; and,
>
> Count 9: Corporate Waste against QHR

(Compl. ¶¶ 116-177). Specifically, Natchez Regional alleges that the defendants breached the management agreement and intentionally mislead the Natchez Regional Board of Directors regarding the profitability of the hospital and the earnings for the fiscal year ending September 30, 2007. Natchez Regional also alleges that the defendants withheld financial information from the Board of Directors and auditors and fraudulently transferred funds from Natchez Regional to QHR to pay for "management fees, executive payroll, and benefits" under the management agreement. (Compl. ¶ 164). Natchez Regional alleges that these transfers "were made with the actual intent to hinder, delay, or defraud creditors of the Hospital." (Compl. ¶ 165). The plaintiff seeks forty-six million dollars in compensatory damages and an unspecified amount of punitive damages. (Compl. ¶ 177).

The defendants filed the Motion to Dismiss on February 8, 2010. Therein, the defendants argue that the Court should dismiss Counts 1, 3, 4, and 8 for failure to state a claim and dismiss Counts 1, 3, 4, 5, 6, 7, 8, and 9 as barred by the statute of limitations. The plaintiff filed its Response [docket entry no. 14] to the Motion to Dismiss on February 22, 2010. The defendants

filed their Reply [docket entry no. 16] on March 1, 2010.

The defendants also filed a Motion for More Definite Statement on February 8, 2010. Therein, they request that the Court order the plaintiff to plead its fraud claim and fraudulent transfer claim with the "particularity" required by Fed. R. Civ. P. 9(b), if those claims are not dismissed pursuant to the defendants' Motion to Dismiss. The plaintiff filed its Response [docket entry no. 15] on February 22, 2010. These motions are now before the Court.

## II. STANDARD OF LAW

When considering a motion to dismiss under Rule 12(b)(6), the district court must accept all well-pleaded facts as true and view the facts in a light most favorable to the plaintiff. Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1964-65 (2007). The Supreme Court stated that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). To have facial plausibility, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" Id. at 1950(citing FED. RULE. CIV. PRO. 8(a)(2)).

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 127 S.Ct. at 1969. Furthermore, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id.(quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683 (1914)(overruled on other grounds)).

### III. ANALYSIS

**1. Defendants' Motion to Dismiss**

In their motion, the defendants first argue that Counts 1, 3, 4, 5, 6, 7, 8, and 9 of the plaintiff's Complaint are barred by the statute of limitations. The defendants assert that because QHR entered into a management agreement with Natchez Regional, a community hospital and entity of the State of Mississippi, QHR was an instrumentality of the hospital and performed government activities which entitles it to the protections, limitations, and immunities of the Mississippi Tort Claims Act ("MTCA"). The defendants assert that the alleged tortious conduct that is the subject of this action occurred before February 12, 2008, and that the Complaint was not filed until December 7, 2009. Because the

Complaint was filed over one year after the plaintiff had knowledge of its alleged injuries, the defendants argue that the one year statute of limitations set forth in the MTCA bars the plaintiff's claims.

In support of the defendants' contentions they cite to <u>Sykes v. Quorum Health Resources, Inc.</u>, 2009 WL 4807310 (Miss. Ct. App. 2009). In <u>Sykes</u>, Neshoba County Nursing Home ("NCNH") and QHR entered into a management agreement, similar to the one in the instant case, that required QHR to perform certain services for the nursing home.[3] Thereafter, a private plaintiff filed a wrongful death action against NCNH and QHR. The court held that "it is clear that under the precise circumstances of this case and context of the relationship between Quorum and NCGH," . . . "that Quorum is an 'instrumentality' of a community hospital, . . . [and] 'is entitled to the protections, limitations[,] and immunities of the MTCA.'" 2009 WL 4807310, at *8 (citing <u>Bolivar Leflore Med. Alliance</u>, 938 So. 2d 1222, 1232 (Miss. 2006)). Based upon this holding, QHR now argues that they are entitled to the protections of the MTCA and the one year statute of limitations which would bar the plaintiff's claims.

In its Response, the plaintiff argues that the one year statute of limitations is not applicable in this case because this

---

[3] The defendant QHR in the <u>Sykes</u> case is the defendant in the instant case.

is not a MTCA case.  The plaintiff asserts that the Mississippi Constitution Article 4, Section 104 provides that "[s]tatutes of limitation in civil causes shall not run against the state, or any subdivision or municipal corporation thereof."  Additionally, the plaintiff argues that Miss. Code Ann. § 15-1-51, codifies the constitutional language and states that "[s]tatutes of limitations in civil cases shall not run against the state, or any subdivision or municipal corporation thereof . . . ."  Because Natchez Regional is a community hospital and a subdivision of the state, the plaintiff argues that no statute of limitation bars its claims. Further, the plaintiff argues that Sykes is distinguishable from the instant case because, in Sykes, a private plaintiff sued QHR as a derivative of NCNH because QHR managed the nursing home. Here, the plaintiff argues, QHR is being sued by Natchez Regional, a community hospital of the state of Mississippi.  The plaintiff further argues that QHR is not entitled to the protections of the MTCA because, unlike Sykes, Nathez Regional is not a third party or private individual as was the plaintiff in Sykes.  Thus, the plaintiff argues that the MTCA is not applicable to this case.  The Court finds this argument persuasive.

The Mississippi Legislature's intent in enacting the MTCA was "to immunize the state and its political subdivisions from any *tortious* breach of implied term or condition of any warranty or contract" as well as "any wrongful or tortious act or omission."

7

City of Grenada v. Whitten Aviation, Inc., 755 So. 2d 1208, 1213 (Miss. App. 1999)(overruled on other grounds)(emphasis in original); MISS. CODE ANN. § 11-46-3 (1972). Furthermore, the MTCA is the sole vehicle through which a private individual may sue the State of Mississippi, government entities, political subdivisions of the state, or employees of the state acting in the course and scope of their employment for alleged tortious acts. MISS. CODE. ANN. § 11-46-7. In this case, a community hospital is alleging claims against a private corporation. This Court can find no authority for applying the MTCA to a case in which the state is suing a private corporation.

Indeed, the position of QHR in the instant case is analogous to the position of McDonald Transit Associates, Inc. in Thompson v. McDonald Transit Associates, Inc., 440 F. Supp. 2d 530 (S.D. Miss. 2006). In Thompson, the City of Jackson, Mississippi executed an Advisory Management Agreement with McDonald whereby McDonald would receive a fee to operate and maintain JATRAN, the public bus system in Jackson. 440 F. Supp. 2d at 531. Under the agreement, McDonald was charged with furnishing a general manager to run the day to day operations of JATRAN. Id. Thereafter, a passenger was injured when a bus driver negligently closed the bus door while the passenger was trying to board. Id. at 530. The passenger sued McDonald for negligence. Id. at 531. McDonald filed a motion for summary judgment, arguing that it was entitled to the protections

and immunities of the MTCA because it was a political subdivision of the state as the operator of JATRAN. Id. The court held that because "McDonald was not created for the sole purpose of fulfilling a state mandated government service . . . [and] was presumably created to be a profitable business for the benefit of its shareholders," it was not entitled to the protections of the MTCA. Id. at 533. The court further stated that the "operation and ownership of JATRAN is likely not McDonald's lone purpose for existence . . . [and] [c]onsidering McDonald is a Texas corporation, the Court presumes that McDonald is involved in other ventures in other states." Id. The Thompson court held that the "capitalistic nature" of McDonald's business was the "overriding consideration" for finding that it was not entitled to the protections of the MTCA. Id.

Similarly, this Court finds that QHR is not entitled to the protections, limitations, and immunities of the MTCA. QHR is a Delaware company with its principal place of business in Tennessee and, presumably, has capitalistic ventures elsewhere. (Compl. at ¶ 2). Moreover, in the instant case, QHR is being sued by a community hospital of the State of Mississippi as defined by Miss. Code Ann. § 41-13-10. The Court holds that the findings of the Sykes court that QHR was an instrumentality of the state is not applicable to the instant case because, here, QHR is being sued by a community hospital and not by a private individual. Indeed, the

9

Sykes court specifically stated that its holding was subject to the "precise circumstances of this case and context of the relationship between Quorum and NCGH. . . ." 2009 WL 4807310, at *8.

Second, the defendants argue that Counts 1, 3, 4, and 8 should be dismissed for failure to state a claim. As to Count 1, the defendants argue that they owed no fiduciary duty to the plaintiff because their relationship with the plaintiff was based on the management agreement and the contractual provisions therein. As to Count 4, the defendants argue that all of their duties and liabilities to the plaintiff were set out in the management agreement and an alleged breach of those duties only gives rise to a claim for breach of contract, not negligence.

In its Response, Natchez Regional argues that defendants Wesselman and Anderson were officers (CEO and CFO) of Natchez Regional pursuant to the management agreement, and they owed fiduciary duties to Natchez Regional. The plaintiff asserts that QHR owed fiduciaries duties to Natchez Regional "as a result of the control it exercised as well as the trust and reliance" placed in QHR by Natchez Regional. Plaintiff's Response [docket entry no. 14], at 11. The plaintiff also asserts that the negligence claim is valid because the management agreement created a legal relation of "trust and confidence" between the parties, and this relation was breached by the defendants. Id. at 12.

"To maintain an action for breach of fiduciary duty, a

fiduciary relationship must exist." Skinner v. USAble Life, 200 F. Supp. 2d 636, 641 (S.D. Miss. 2001)(citing Lowery v. Guaranty Bank and Trust Co., 592 So. 2d 79, 83 (Miss. 1991)). A fiduciary relationship may arise where "(1) the activities of the parties go beyond their operating on their own behalf, and the activities [sic] for the benefit of both; (2) where the parties have a common interest and profit from the activities of the other; (3) where the parties repose trust in one anther; and (4) where one party has dominion or control over the other." Booker v. American General Life and Accident Insurance Co., 257 F. Supp. 2d 850, 860 (S.D. Miss. 2003)(citing University Nursing Associates, PLLC v. Phillips, 2003 WL 328034, at *2 (Miss. 2003)). Here, defendants Wesselman and Anderson, although hired by QHR, served as the CFO and CEO of Natchez Regional, thereby having "a common interest and profit from the activities of" both parties. Id. In addition, the facts show that the plaintiff reposed trust with QHR in the operation and management of the hospital as well as in financial decisions. It is also clear that QHR, through Wesselman and Anderson, had "dominion and control" over some aspects of the hospital operations and management. Inasmuch as the Court must accept all well-pleaded facts as true and view the facts in a light most favorable to the plaintiff, the Court finds that the plaintiff has plead sufficient facts which give rise to a claim for breach of fiduciary duties against all defendants. Therefore, the defendants' motion to

11

dismiss Count 1 should be denied.

In regard to Count 4, Mississippi recognizes, in addition to a breach of contract claim, a claim for tortious breach of contract. "A tortious breach of contract is a breach of contract *coupled with* 'some intentional wrong, insult, abuse, or negligence so gross as to constitute an independent tort.'" Robinson v. Southern Farm Bureau Casualty Co., 915 So. 2d 516, 520 (Miss. Ct. App. 2005)(emphasis added)(quoting Wilson v. Gen. Motors Acceptance Corp., 883 So. 2d 56, 66 (Miss. 2004)). In order "[t]o recover for tortious breach, a plaintiff must show that it is entitled to punitive damages, as the general rule for recovery under a tortious breach claim is the same as the general rule for recovery of punitive damages in a breach of contract action." Unity Communications, Inc. V. AT&T Mobility, LLC, 643 F. Supp. 2d. 829, 839 (S.D. Miss. 2009). "Although punitive damages are not ordinarily recoverable in cases involving breach of contract, they are recoverable where the breach results from an intentional wrong, insult, or abuse as well as from such gross negligence as constitutes an independent tort." Parcelsus Health Care Corp. V. Willard, 754 So. 2d, 437, 447 (Miss. 1999)(citations omitted).

In this case, the plaintiff states a claim of negligence against all defendants, alleging that the defendants "breached their duty and standard of care through actions and inactions . . . by failing to exercise reasonable care, failing to adhere to

12

accepted practice with the hospital management profession, and deviating and departing from accepted practices within their profession, in the performance of their professional services for the Hospital . . . ." (Compl., at 141). Specifically, Natchez Regional alleges that the defendants intentionally provided misleading financial reports to the hospital board, intentionally withheld information from auditors, failed to re-negotiate managed care agreements and optimize rates, excessively staffed the hospital and provided excessive employee benefits, and intentionally used QHR partners to earn additional fees for QHR. The Court is of the opinion that these allegations, together with the plaintiff's claim for punitive damages, "contain specific factual matter," which, if true, supports a "plausible claim" for negligence amounting to a tortious breach of contract. Iqbal, 129 S.Ct. at 1949. Therefore, the defendants' Motion to Dismiss Count 4 should be denied.

As to Count 3, the defendants argue that this claim should be dismissed because it is essentially the same as the plaintiff's breach of contract claim. They assert that, in the management agreement, there is an implied duty of good faith and fair dealing, and they argue that there is no independent cause of action for a breach of an implied duty of good faith and fair dealing.[4] The

---

[4] As support for their argument, the defendants cite Furr Mktg., Inc. V. Orval Kent Food Co., 682 F. Supp. 884, 886 (S.D. Miss. 1998), in which the court applied Illinois law and found that

plaintiff asserts that Mississippi law does expressly recognize an independent cause of action for a breach of the duty of good faith and fair dealing. Indeed, Mississippi law recognizes that every contract contains an implied covenant of good faith and fair dealing. Baldwin v. Laurel Ford Lincoln-Mercury, Inc., 32 F. Supp. 2d 894, 898 (S.D. Miss. 1998)(citing Cenac v. Murray, 609 So. 2d 1257, 1272 (Miss. 1992)). "'This duty is based on the fundamental notions of fairness,'" and "[t]he breach of good faith is bad faith characterized by some conduct which violates standards of decency, fairness, or reasonableness." Cenac, 609 So. 2d at 1272 (citing Restatement (Second) of Contracts § 205, 100 (1979)). The Court finds that the plaintiff has plead facts which, if proven, give rise to a claim for breach of the duty of good faith and fair dealing. Thus, the defendants' Motion to Dismiss Count 3 should be denied.

Finally, the defendants argue that Count 8 should be dismissed because Natchez Regional has not asserted that QHR fraudulently transferred funds belonging to Natchez Regional with the intent to hinder, delay or defraud a creditor, as required by Mississippi's

---

Illinois law did not recognize an independent cause of action for a breach of duty of good faith and fair dealing. However, the contract in dispute in that case stated that Illinois law governed the contract. Id. at 886. In the instant case, there is no evidence in the record that Illinois law governs the management agreement. Therefore, for the purpose of this Opinion and Order, the Court assumes that Mississippi law governs.

Uniform Fraudulent Transfer Act ("UFTA").[5] Natchez Regional argues that it has plead specific facts which constitute a valid claim under the UFTA.

UFTA went into effect in Mississippi on July 1, 2006.[6] Under the UFTA, a creditor may bring an action for relief against a debtor to void a fraudulent transfer, obtain an "attachment" against the transferred asset, obtain an injunction against further disposition of the debtor's assets, or appoint a receiver to "take charge" of the debtor's transferred asset. MISS. CODE ANN. § 15-3-111 (2006). In general, to assert a claim under UFTA, the plaintiff must plead and prove that "(1) the debtor made a transfer or incurred an obligation; (2) the plaintiff was a creditor of the debtor; and (3) the debtor made the transfer or incurred the obligation with actual intent to hinder, delay or defraud any creditor of the debtor." Stephen Shareff, <u>Causes of Action to Set Aside or Recover for Fraudulent Transfer or Obligation under Uniform Fraudulent Transfer Act</u>, 26 Causes of Action 773, at § 3 (Sept. 2009). Clearly, to bring an action pursuant to UFTA, the

---

[5] UFTA provides that "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay or defraud any creditor of the debtor." MISS. CODE ANN. § 15-3-107.

[6] There is no precedent in Mississippi interpreting or analyzing this statute.

plaintiff must be a creditor of the debtor/defendant. MISS. CODE ANN. § 15-3-111; 26 Causes of Action at § 12. Under the facts of this case, Natchez Regional does not appear to be a creditor of the defendants. Rather, Natchez Regional was a contracting party with the defendants pursuant to the management agreement. The funds that Natchez Regional alleges were fraudulently transferred to the defendants were funds transferred from one contracting party to another, not from a debtor to a third party. Nonetheless, as previously stated, no precedent exists in Mississippi regarding the construction of this statute, and the Court is of the opinion that dismissal of this claim is premature until further facts are determined during the course of discovery.

**2. Defendants' Motion for More Definite Statement**

In this motion, the defendants argue that the plaintiff has not plead its fraud claim (Count 5) with particularity pursuant to Fed. R. Civ. P. 9(b). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake . . . [m]alice intent, knowledge, and other conditions of a person's state of mind may be alleged generally." The Fifth Circuit has stated that, in regard to Rule 9(b), a plaintiff must "plead enough facts to illustrate 'the "who, what, when, where, and how" of the alleged fraud.'" Carroll v. Forth James, Corp., 470 F.3d 1171, 1174 (5th Cir. 2006)(citations omitted). Further, "[i]n cases concerning fraudulent

misrepresentation and omission of facts, Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading." United States ex rel. Riley v. St. Luke's Episcopal Hospital, 355 F.3d 370, 381 (5th Cir. 2004)(citing 2 James W. Moore, et al., Moore's Federal Practice § 9.03[1][b] at 9-18 through 9-19 (3d ed. 2003)). Nonetheless, the Fifth Circuit has also stated that:

> In view of the great liberality of F.R.Civ.P. 8, permitting notice pleading, it is clearly the policy of the Rules that Rule 12(e) should not be used to frustrate this policy by lightly requiring a plaintiff to amend his complaint which under Rule 8 is sufficient to withstand a motion to dismiss. It is to be noted that a motion for more definite statement is not to be used to assist in getting the facts in preparation for trial as such. Other rules relating to discovery, interrogatories and the like exist for this purpose.

Mitchell v. E-Z Way Towers, Inc., 269 F.2d 126, 132 (5th Cir. 1959).

In the instant case, the plaintiff filed a 58 page Complaint with detailed factual allegations supporting its claim for fraud. In the Complaint, the plaintiff alleges that the defendants failed to disclose financial information and misrepresented the profits of the hospital to the Natchez Regional Board of Directors during 2006 and 2007 in order to secure an extension of the management agreement. This allegation clearly complies with the "who, what, when, where, and how" particularity requirement under Rule 9(b).

17

The plaintiff also made other specific allegations in the Complaint including:

> that the Defendants made repeated reports to the Board that falsely claimed monthly profitability figures for the Hospital (Complaint, ¶¶ 42-43, 44-45, 47, 50); that Quorum falsely informed the board in February 2006 of a "positive shift to profitability over the "past six months" (Complaint, ¶ 43); that Defendant Wesselman falsely informed the Board in mid-2006 that "year-to-date the Hospital was operating at a profit" (Complaint, ¶ 45); that Defendant Anderson falsely informed the Board in early 2007 that the "year to date profit was now ahead of budget" (Complaint, ¶ 47); that the Defendants failed to disclose the material fact that reported profit figures were highly misleading as they were based on short-term, non-recurring revenues (Complaint, ¶ 48); that Defendant Anderson caused accounting journal entries to be made for fiscal year 2007 without appropriate support (Complaint, ¶ 49); that contrary to Defendants' representations during the 2007 fiscal year that the Hospital was profitable, the Hospital was in fact losing money (Complaint, ¶ 51); and that the trial balance that the Defendants ultimately provided to the auditor materially understated the loss for the 2007 fiscal year by over $1.5 million [dollars] (Complaint, ¶ 52).

Plaintiff's Response [docket entry no. 15], at 6-7. Thus, this Court is of the opinion that the plaintiff has substantially complied with the particularity requirement in Rule 9(b) and the defendants' motion should be denied.

## IV. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the defendants' Motion to Dismiss [docket entry no.8] is **DENIED**.

**IT IS FURTHER ORDERED** that the defendants' Motion for More

Definite Statement [docket entry no. 9] is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 20th day of August 2010.


       s/ David Bramlette

       **UNITED STATES DISTRICT JUDGE**